Kirkpatrick C. J.
This case is submitted to the consideration of the court, without argument. It is not quite so fully stated as could have been wished, and yet, perhaps, we may collect from it, all the materials necessary for a just decision. It states in substance, that William Harris, the plaintiff, was both a legatee and a creditor of Lsaac Harris, the testator; that the executors paid him his legacy in full; that he sued them for his debt and obtained a judgment by default; and that this action is upon that judgment, suggesting a devastavit. The executors plead payment, and offer to give in evidence by way of set-off; that upon the final settlement of the estate, it proves to be insufficient to pay both debts and legacies, that therefore William Harris has received more than his proportion, and is bound to refund, and that they ought to be allowed to set up the sum so to be refunded, against his debt.
I shall take it, that the defendants, as executors of tlie will of Lsaac Llarris, paid to William Harris, the plaintiff, his legacy of 650 dollars, in full count, voluntarily, without suit, and ivithout taking a refunding bond; that they afterwards settled their accounts in the Orphans’ Court of the proper county; that upon such settlement, the estate proved to be insufficient to pay debts and legacies; and that therefore they call upon this legatee to refund in favour of such deficiency. And if this be so, the case will present these two questions.
*487 1. Whether William Harris, the legatee, and the plaintiffin tills cause, is liable to refund to the executors at for this purpose; and if so,
2. Whether the sum to be refunded can he set up against him by way of set-off in this action.
1. The first of these appears to me to he an important question, and I could have wished to hear it discussed at the bar; hut as it is I will make a few observations upon it, indicating my present impressions, and leaving it to be spoken to afterwards, if it shall be thought necessary.
It is well settled, that if the estate of the testator be insufficient originally, and without the waste of the executor, to pay debts and legacies, the pecuniary legacies shall abate proportionably, *in favour of the debts first, and tlion in favour of one another ; and after they are exhausted, the specific legacies shall contribute in like manner in favour of debts, hut never in favour of pecuniary legacies. This is the rule.
In order to carry it the more easily into effect, the spiritual court in England, upon a suit for a legacy, will, at the request of the executor, compel the legatee to give bond and security to refund in case the estate should prove to bo deficient; and if the court, after such request, should proceed without such bond, a prohibition will go from the chancery. The same course is prescribed by our statute here, upon commencing a suit for a legacy in our common law courts. But yet this refunding bond does not create the duty or obligation to refund; that exists in the fundamental principles of the law itself; it is the condition or trust (says Gilbert in his lex prostoria) upon which the legatee receives the legacy, and the bond is merely to secure the performance of that condition or trust; and therefore, if such bond should not he taken, it does by no means follow that the duty ceases, or that the obligation is discharged.
Hence we find, that if a legacy be decreed in chancery, though there bo no bond taken, yet if there he a failure of assets, the common justice of the court will compel the legatee to refund. 1 Ver. 90. So too, if upon an undertaking to pay a legacy, there he an action of assumpsit in a court of common law and a judgment *488 thereupon, though there be no bond, the legatee shall Cowp. 284. Indeed it is a general principle, that if there be a deficiency of assets, without waste, and the executor pay one legatee in full, the other legatees, as well as the creditors, may ultimately follow the assets into the hands of such legatee and compel him to refund for their benefit; and even in case of waste, the same thing may be done by creditors, but not by legatees, for peradventure they might, by due diligence, have recovered their legacies before the waste committed, and therefore it is their own negligence; they, in that case, can look to the executor only.
I conclude, therefore, that the executors, in this case, neglecting to take a refunding bond, of itself and simply considered, does not exonerate the plaintiff from his liability to refund in favour of creditors and other legatees.
But though it should be granted that this be so as to the ulti*mate rights of such creditors and legatees, yet still it may be said that these executors cannot call for such refunding, for that having made a voluntary payment of this legacy, without suit and without bond to refund, they have thereby admitted assets in their hands for that purpose, and that they are therefore now totally precluded from averring the contrary. I am aware that we find sayings like this in our books; and I am aware too that some of them carry it still further, and say that such voluntary payment is a confession of assets not only for the particular legacy paid, but also for all other legacies, and of course for all debts, for they are to be paid first.
This has always appeared to me to be a strange doctrine, and one. which cannot be supported upon sound principles of reason. This admission, which is to conclude the executor, frequently to his utter ruin, is but a presumptive admission arising by construction, a presumption fixing upon him an assent to a fact which he never intended to give, and raising up against him an acknowledgment which is contrary to the truth, and which he never actually made. That such voluntary payment should be prima facie evidence of assets, and raise a pre *489 sumption to that effect against the executor, would consist with the principles of evidence in other cases, but-that it should preclude him entirely from shewing the truth, is contrary to all principle. The admission contended for, certainly is not an express admission, but a presumptive one only. Now is it possible, that a court administering justice, shall be bound to take this presumption in exclusion of the naked truth, laid open before them in the judicial records, of the very tribunal to which it exclusively belongs to ascertain the amount of the assets? And yet the whole argument here rests upon taking this presumption in exclusion of such record.
Will it be said that an executor may guard against this difficulty by taking a refunding bond ? It is true he may so. But if the duty exists and the bond is only for the greater security of the executor, and if the not taking of i t is for the benefit and easement of the legatee, and not for his injury or loss, how is it possible that ho can set it up in his defence? Indeed, it is nowhere pretended that he can set it up per se, but only that it goes in corroboration of the admission of assets; and of this I have before spoken.
*Tlio good sense of the thing seems to be that the executor shall be responsible for the estate of the testator, so far as the same comes to his hands, or by due diligence, might have been reduced into his possession, but for nothing more; that if through misapprehension or mistake, he shall pay a legacy in full count, and debts are afterwards discovered of which he had no notice or if losses are sustained upon outstanding risks, responsibilities or contingencies, which no common prudence could either foresee or prevent, so that the estate becomes insufficient to pay all, such legatee is bound, not only ex eqao et bono but also upon the implied condition on which he received his legacy, to refund, (a) Such payment, it is true, as against others, would be a devastavit in the executor pro tanto, and he must answer it out of his own goods, but it would be pro tanto only; nor does this at all militate against the responsibility of the legatee *490 who has received the money or in any manner of way him from his liability to refund to the executor.
It must be admitted, however, that there is a train of cases, which though somewhat contradictory to one another, seem to countenance this doctrine, and some of them to speak of it as settled law. Yet I am inclined to think that if these cases be carefully examined, and stripped of all gratuitous sayings, they will be found to turn upon particular circumstances, and by no means to support the doctrine in the extent in which it is sometimes laid down. But as I am diffident of my own judgment upon this subject, and it is my intention at present rather to invite investigation than to express an opinion, I shall not now enter upon such examination.
If my impressions upon this first question should be found to be well grounded, then we have only to enquire further.
2. Whether the sum so to be refunded can be set up against the plaintiff by way of set-off in this action.
In considering this, we may lay out of the case all objections as to the length of time, for none such were set up at the trial; and if there had been, probably the duty would have been considered as arising, in certainty, at the time of the settlement before the Orphan’s Court, and not before.
The only thing then to be enquired of is, whether the money so to be refunded, would belong to the executors, as such, or in their own private right, for if in their own private right, it could *not be set up by them in this action. And if it be true, as lord keeper Finch says in Chamberlain v. Chamberlain, (1 Ch. Ca. 257) that “ a legacy being paid remains as a legacy in the hands of the legatee even after payment, till all debts are paid,” there can be no doubt; for the obvious meaning of the lord keeper is, that the money, even in the hands of the legatee, for this purpose, continues to be the property of the executor; the legatee is but the keeper of it for his use. Indeed the whole doctrine of refunding goes upon the principle that the *491 money refunded is assets in the hands of the executors for the payment of debts. .
Unless it should be desired therefore by the counsel to speak to the subject, I should incline to say the defendants were entitled to their set-off, and that the judgment upon the agreement must be entered accordingly.
Of this opinion were the whole court.

 See Ely vs. Norton, 1 Hal. 187.